NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOUISE SCRUTCHINS, | |
| Plaintiff, | Civil Action No. 12-5855 (SRC) |
| v. | OPINION |
| STATE OF NEW JERSEY, DEPARTMENT OF CHILDREN AND FAMILY SERVICES, DIVISION OF CHILD PROTECTION AND PERMANENCY, | |
| Defendant. | |

**CHESLER**, District Judge

This matter comes before the Court on the motion for summary judgment filed by Defendant State of New Jersey, Department of Children and Family Services, Division of Child Protection and Permanency (hereinafter "Defendant" or "DCF"). Plaintiff Louise Scrutchins ("Plaintiff" or "Scrutchins") opposes the motion. The Court has considered the papers filed by the parties and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant DCF's motion for summary judgment.

I. **BACKGROUND**

This is an employment discrimination and civil rights action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1983, respectively. Plaintiff Scrutchins is an African American female, currently employed by DCF in the capacity

of Supervising Family Service Specialist II. She was initially hired by DCF in 1988 to serve as a Family Service Specialist III, also known as a caseworker, in the division then known as the Division of Youth and Family Services ("DYFS").[1] She has received numerous promotions and salary increases throughout her years of employment with DCF. Scrutchins holds a bachelor's degree in sociology from Montclair State University and a master's degree in social work from Rutgers University. She has been a licensed social worker since approximately 1995 and has received a certification in that field.

In this action, Plaintiff alleges that DCF has failed to promote her on numerous occasions due to her race and also in retaliation for bringing lawsuits against DCF and for filing complaints with the Equal Employment Opportunity Commission ("EEOC"). She asserts a retaliatory failure to promote claim in violation of Title VII and also asserts Title VII and § 1983 claims based on the allegation that Defendant's actions have been motivated by racial discrimination.[2] Summarizing the record before the Court, the facts on which these claims are based are as follows:

Between July 2011 and May 2012, Scrutchins applied various times for the positions of County Services Specialist and Program Development Specialist. Personnel decisions regarding these civil service positions are governed by the New Jersey Administrative Code and must be approved by the Civil Service Commission. Regulations require that an applicant take a competitive examination to qualify for such positions, and the applicant's performance on the test will determine his or her placement on a list of qualified eligible candidates. In August 2008, Scrutchins acquired the necessary program administration experience to be considered for

---

[1] DYFS is now known as the Division of Child Protection and Permanency.
[2] The Complaint also pleads for relief under the New Jersey Law Against Discrimination ("NJLAD"). Summary judgment will be granted on this claim, as Plaintiff concedes in her responsive brief that she is barred from pursuing the claim.

the position of County Services Specialist. She obtained placement on the 2009 eligibility list for the job title of County Service Specialist, ranking number 250 on the list of qualified candidates. According to the record, the list was promulgated on February 12, 2009 and expired on February 11, 2012. On or about September 15, 2009, DCF removed her name from the list. The stated reason was Scrutchins's failure to respond to a Notice of Certification within the time required by law. According to Plaintiff, however, DCF Human Resources Director Linda Dobron removed her name from the list because Scrutchins is African American. Though she did not initially take any action upon being notified of her ineligible status, Scrutchins eventually challenged the removal. On appeal to the Civil Service Commission, the Commission observed that it appeared that Plaintiff's response to the Certification Notice had been received in the Trenton post office one day after the time for responding expired and further observed that regulations allowed the appointing authority to remove a person from eligibility lists for failure to comply with Certification Notice instructions. Nevertheless, the Civil Service Commission concluded that Scrutchins should be restored to the list given that DCF did not oppose taking such action. Scrutchins was restored on or about July 18, 2011 as eligible for prospective employment opportunities as a County Services Specialist until the February 11, 2012 expiration date of the list.

      Between 2011 and 2012, she applied four times for a County Services Specialist position but was not selected for an interview. According to the Certification of DCF Human Resources Manager Andrea Maxwell, civil service regulations permit DCF to offer the position to the top three candidates on the eligibility list, meaning those ranking higher than Scrutchins would have to become ineligible or decline the position before she could enter the top three.

Scrutchins is not on the list for County Services Specialist which was subsequently issued by the Civil Service Commission in 2013.

In or about March 2012, Scrutchins also applied for a Program Development Specialist 1 position in Trenton. DCF forwarded her application to the local office where the position was available. Three local office employees were responsible for selecting candidates for interviews and filling the position. Scrutchins was not selected for an interview. The local office employees ultimately selected an African American female for the position.

It is undisputed that Plaintiff's application for any of these positions makes no reference to her race. Nevertheless, Plaintiff asserts that HR Director Dobron has deliberately blocked her from receiving promotions because Scrutchins is African American.

Plaintiff also maintains that the failure to promote her was retaliatory for actions she brought against DCF. The first action dates back to the early 1990s, when Scrutchins filed an administrative appeal of her December 20, 1991 termination of employment from DYFS. That matter was settled, with the termination converted into a suspension, and Scrutchins resumed her employment with DYFS in June 1993. The second action was a federal lawsuit against DYFS and DYFS employees Ruth Stagg and Robert Sabreen, filed by Scrutchins in the Superior Court of New Jersey on or about December 14, 2004 and removed to the District Court of New Jersey. In that suit, Plaintiff alleged a failure to promote based on discrimination and retaliation in violation of the New Jersey Law Against Discrimination and in violation of her federal civil rights. The suit settled. In consideration for $60,000, Scrutchins dismissed her claims with prejudice and signed a release, dated August 28, 2008, running to the benefit of DYFS (the prior name of the Defendant in this action), Stagg and Sabreen. The release reads, in pertinent part, as follows:

4

> I release and give up any and all claims and rights which I may have against You.  This releases all claims, demands, damages, causes of action, or suits which have been or could have been brought.  This releases all claims, including those of which I am not aware and those not mentioned in this Release.  This releases all claims resulting from anything which has happened up to now, including but not limited to, all claims which were or could have been brought, including but not limited to any claim of discrimination, harassment or retaliation, in the action entitled Louise Scrutchins v. new jersey Division of Youth and Family Services, Ruth Stagg and Robert Sabreen, Civil Action No. 05-925 (SRC) in the United States District Court, Newark Vicinage.

(Hamlin Cert., Ex. J.)  Scrutchins also identifies an EEOC charge she filed on May 15, 2008 as motivation for DCF's refusal to promote her.  In the May 2008 EEOC charge, Scrutchins complained that she was wrongfully denied a promotion to the title of County Services Specialist.  The EEOC dismissed the charge on or about March 18, 2009 because it was "unable to conclude that the information obtained establishes violations of the statutes."  (Boardman Cert., Ex. DD.)

Prior to filing the instant lawsuit, Scrutchins filed charges with the EEOC on May 16, 2012 alleging that she was denied promotions on the basis of her race and in retaliation for her employment discrimination complaints.  She alleged that she was denied job interviews for promotions and lateral transfers, that her name was removed from the County Services Specialist employment eligibility list and that Linda Dobron did not provide a notification of eligibility for each county Scrutchins requested to be considered for employment opportunities.  (Boardman Cert., Ex. EE).  The EEOC dismissed the charges for lack of information to substantiate a statutory violation.  It issued its dismissal and right to sue letter on June 18, 2012.  The instant suit was filed in this Court on September 18, 2012.

**II.     DISCUSSION**

    **A.  Legal Standard**

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'"  Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  It may not make credibility determinations or engage in any weighing of the evidence. Anderson, 477 U.S. at 255.

The showing required to establish that there is no genuine issue of material fact depends on whether the moving party bears the burden of proof at trial.  On claims for which the moving party does not bear the burden of proof at trial, the movant must point out to the district court "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  In contrast, "[w]hen the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish the existence of a genuine issue as to a material fact. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 134 S. Ct. 773 (2014). However, the party opposing the motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

### B. The Release Signed By Scrutchins on August 28, 2008

DCF argues that to the extent Plaintiff asserts Title VII claims for any instance of an allegedly wrongful failure to promote occurring before August 28, 2008, her claims are barred by the release she signed on that date. DCF is correct. The release clearly states that Scrutchins agrees to give up "all claims" against DCF, whether known or unknown to her, "resulting from anything which has happened up to now." Plaintiff acknowledges that she has waived all claims concerning events prior to August 28, 2008. In her opposition brief, she simply clarifies that the release does not apply to events in the future, a point on which the parties agree. The Third Circuit has held that a release is valid and enforceable if entered into "knowingly and voluntarily." Jakimas v. Hoffmann-LaRoche, Inc., 485 F.3d 770, 781 (3d Cir. 2007). "An employee may validly waive claims of discrimination so long as the waiver is made 'knowingly and willfully.'" Coventry v. U.S. Steel Corp., 856 F.2d 514, 522 (3d Cir. 1988) (quoting

7

Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974)). Scrutchins does not contend that she executed the August 28, 2008 release under duress or undue influence or that that circumstances indicate that the agreement was induced by fraud. See, e.g., Jakimas, 485 F.3d at 781-82 (discussing circumstances that would cast into doubt the enforceability of a release). On the contrary, she recognizes, in her brief and in her deposition testimony, that she freely agreed to "release all claims resulting from anything which happened up until August 28, 2008." (Opp. Br. at 19.) Moreover, the Court notes that the record reflects that Plaintiff is well-educated, possessing various degrees and professional certifications, that the release was the result of settlement negotiations and that Scrutchins was represented by counsel in the lawsuit, including at the time she executed the release. Accordingly, summary judgment in favor of DCF is warranted on Scrutchins's failure to promote, retaliation and discrimination claims, under Title VII, the NJLAD, and/or any other cause of action she asserts, insofar as the claims are based on or arise out of events occurring prior to August 28, 2008.

### C. Plaintiff's EEOC Charge and the Timeliness of Her Title VII Claims

DCF argues that a portion of Plaintiff's claims may not proceed as a matter of law because Plaintiff has failed to comply with Title VII's pre-suit requirement of filing a timely charge with the EEOC. To maintain a civil action for relief under Title VII, a plaintiff must first file a charge against a party with the EEOC and receive a right to sue letter. 42 U.S.C. § 2000e-5(e)(1); see also Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976) (holding that the "prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue.") The charges set the parameters of the action that can be pursued by a plaintiff. Id. at 398-99. A plaintiff is also constrained by the timeliness of the charges filed. Title VII "specifies with precision" that before bringing a

claim under the statute, a plaintiff must file an EEOC charge within the statutory time period, either 180 or 300 days, "after the alleged unlawful employment practice occurred." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) (quoting 42 U.S.C. § 2000e -5(e)(1)).  For charges arising in a state which has its own agency to enforce laws against employment discrimination, the EEOC must refer complaints to the agency, and as such Title VII provides that, in a state with a deferral agency, "a charge must be filed with the EEOC within 300 days of the alleged discrimination, or within 30 days of notice of termination of state or local proceedings, which period expires first."  Cortes v. University of Medicine and Dentistry of New Jersey, 391 F. Supp. 2d 298, 310 (2005) (citing 42 U.S.C. § 2000e-5(c)).  New Jersey is a "deferral state," in which the EEOC must refer complaints to the New Jersey Division on Civil Rights, and thus a complaint is timely if filed with the EEOC within 300 days of alleged violation.  Id.  It is well established that a claim is barred if the EEOC charge is not filed within the applicable time limit.  Morgan, 536 U.S. at 109.

Before initiating this lawsuit, Plaintiff filed an EEOC charge on May 16, 2012.  The wrongdoing alleged in the charge included the failure to promote Scrutchins on the basis of her race, the failure to select her for interviews and the removal of her name from the County Services Specialist eligibility list.  The EEOC dismissed the charge but issued her a notice of her right to sue, which was marked mailed to Scrutchins on June 18, 2012.  Per the limitations period set by statute, Plaintiff had 90 days from the date she received the notice to file a lawsuit.  See 42 U.S.C. § 2000e-5(f)(1). Defendant does not contest the timeliness of the civil action associated with the May 2012 EEOC charge.

DCF does, however, seek summary judgment on the claims in insofar as they are based on alleged instances of a failure to promote, hire and/or interview Scrutchins that did not occur

9

within the 300-day timeframe preceding the May 16, 2012 EEOC charge. They also seek to bar as untimely any claim based on the removal of Plaintiff's name from the CSS eligibility list, which occurred on or about September 15, 2009, clearly over 300 days before the underlying EEOC complaint was filed to challenge this alleged wrongdoing. The Supreme Court has clearly held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113.

Plaintiff attempts to salvage her claims by arguing that the instances of alleged discrimination and retaliation falling outside the 300-day window are not separate, discrete acts but rather part of the same continuing violation as the instances falling within the 300-day period. Together, Plaintiff argues, these various actions by DCF of repeatedly failing to promote her and consider her for certain positions created a hostile work environment. The Supreme Court has indeed recognized that hostile work environment claims are different from discrete acts in the sense that, by nature, such claims involve repeated conduct and cannot therefore be said to have occurred on a particular day. Id. at 115. In contrast to claims based on discrete acts of discrimination, a hostile work environment claim is based on the cumulative effect of individual acts, which may, by themselves not give rise to a cause of action. Id. Because a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,' . . . such a claim based on all the component acts will be timely so long as an "act contributing to the claim occurs within the filing period." Id. at 117.

Plaintiff, however, fails to explain how a continuing violation theory applies to the wrongdoing she has asserted. Title VII itself expressly identifies a failure to hire, to terminate or

otherwise take action with respect to "compensation, terms, conditions or privileges of employment" as discrete acts. See 42 U.S. C. § 2000e-2. The Supreme Court has held that a failure to promote and a refusal to hire are discrete acts of discrimination and/or retaliation, and "each of these acts starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113-14. Plaintiff recites the law on hostile work environment claims but gives no reason for converting into one aggregate unlawful employment practice the various instances on which she was denied a position or promotion by DCF and the discrete occurrence of removing her from the County Specialist Services eligibility list. Her conclusory position is simply contravened by the facts in the record and the statutory and decisional authority on evaluating the timeliness of Title VII claims.

For these reasons, DCF has demonstrated that the merits of a portion of Plaintiff's claims may not be considered because those claims are time barred. Summary judgment will be granted for Defendant on grounds of untimeliness insofar as the claims are based on the removal of her name from the County Services Specialist list in 2009 and on the instances in which she was not hired for positions to which she applied outside the 300-day period prior to her May 16, 2012 EEOC complaint. The limitations period bars all but five instances in which Plaintiff applied for a promotion within the required 300-day period, which will be identified below. As to these, the Court will analyze DCF's merits-based arguments in support of its motion for summary judgment.

### D. Failure To Promote On the Basis of Racial Discrimination

One of the Complaint's two counts alleges that Plaintiff was not promoted to the DCF positions for which she applied because Plaintiff is African American and prays for relief under

11

Title VII and/or under 42 U.S.C. § 1983. Scrutchins submitted five job applications during the relevant time period:

(1) County Services Specialist, September 8, 2011;

(2) County Services Specialist, March 26, 2012;

(3) County Services Specialist, October 3, 2011;

(4) County Services Specialist, September 30, 2011;

(5) Program Development Specialist 1, February 17, 2012.

Plaintiff's claim that she was not promoted to these positions in violation of Title VII is subject to the burden-shifting analysis created by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  To prevail on a Title VII claim, Plaintiff initially bears the burden of establishing, by a preponderance of the evidence, a prima facie case of racial discrimination.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).  To do so, she must demonstrate that "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action." Id. (citing McDonnell Douglas, 411 U.S. at 802).  Under the McDonnell Douglas framework, if the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Sarullo, 352 F.3d at 797 (quoting McDonnell Douglas, 411 U.S. at 802). The employer may satisfy this burden by introducing evidence which, taken as true, would allow the factfinder to conclude that there was a nondiscriminatory reason for the unfavorable employment decision. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507(1993); Burton v. Teleflex, Inc., 707 F.3d 417, 426 (3d Cir. 2013). The employer need not prove, however, that the tendered reason actually motivated the decision.

12

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). In fact, the burden on the defendant at this second stage of the analysis has been described as "relatively light." Burton, 707 F.3d at 426.  The burden remains on the plaintiff to demonstrate that she has been the victim of intentional discrimination.  Burdine, 450 U.S. at 256.  Thus, if the defendant proffers evidence of a nondiscriminatory reason, the burden shifts back to the plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." Burton, 707 F.3d at 426-27.  To show pretext, the plaintiff must point to evidence that would reasonably permit the factfinder to either "(1) disbelieve the employer's articulated reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 427 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994)).

Applying this three-part test to Plaintiff's Title VII discrimination claim, the Court concludes that Defendant has demonstrated that the record lacks evidence which would permit a reasonable factfinder to decide in favor of Plaintiff at trial.  As to the County Services Specialist positions, Scrutchins proffers no evidence that she was passed over for these promotions because she is African American.  In fact, of the four people identified by Plaintiff as having received promotions to the County Services Specialist position, three of these individuals are African American. Her assertion that there is a causal nexus between the failure to promote and her race is purely conclusory.  Moreover, even assuming Scrutchins could point to circumstances that raise an inference of a discriminatory motivation for DCF's failure to promote her, DCF has come forward with evidence on which a reasonable factfinder could conclude that it did not select Plaintiff for the County Services Specialist position for a legitimate, non-discriminatory reason.  In particular, it is uncontroverted that Plaintiff ranked number 250 on the employment

13

opportunity eligibility list for the County Services Specialist title during the relevant time period. As DCF has argued, New Jersey Civil Service rules allow DCF to fill a vacant position with one of the top three interested eligible candidates from an open competitive or promotional list for the job title. See N.J.A.C. 4A:4-4.8(a)3. As they have further argued, during the relevant time period, only a few of the 95 total County Services Specialist positions at DCF were available, and 249 candidates ranked higher than Plaintiff for those few spots. Thus, they have indicated that, under any circumstances, Plaintiff simply would not have been considered for the positions. With the burden shifted back to Plaintiff, she fails to defeat summary judgment because she points to no evidence from which a reasonable factfinder could infer that DCF's explanation for failing to promote Scrutchins to the County Services Specialist position is pre-textual.

     Plaintiff's Title VII discrimination claim based on the Program Development Specialist 1 is also deficient. The record demonstrates that the applications for this position forwarded to the local office for consideration, including Plaintiff's application, did not contain any information as to the respective candidate's race. Three local office employees chose which candidates to interview, and Scrutchins has proffered no evidence that these employees even had knowledge of her race, much less that that she was not chosen based on her race. Scrutchins has not proffered any evidence demonstrating that she was as qualified as the candidate ultimately hired, who in fact was an African American female. DCF has demonstrated, in satisfaction of its Rule 56 burden for summary judgment, that Scrutchins has simply failed to proffer evidence that would permit her to establish a prima facie case of discrimination.

     Plaintiff also claims that as to all the instances in which she asserts DCF did not promote her based on her race, DCF violated her constitutional right to equal protection and is liable under 42 U.S.C. § 1983. To establish a claim under section 1983, a plaintiff must demonstrate

that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535 (1981).  DCF correctly argues that Plaintiff cannot, as matter of law, establish a § 1983 claim because the records lacks evidence that she was subjected to disparate treatment.  Although the disparate treatment claim at issue is grounded in the rights guaranteed by the Constitution, rather than those granted under Title VII, both the Supreme Court and the Court of Appeals for the Third Circuit have applied the McDonnell Douglas analytical framework to "racial discrimination-in-employment claims under 42 U.S.C. § 1983."  St. Mary's Honor Ctr., 509 U.S. at 506 n. 1; Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997). For the reasons discussed above with respect to the Title VII disparate treatment claim, Plaintiff cannot point to evidence that DCF's decisions not to promote her to the positions identified above were motivated by intentional, race-based discrimination.

Accordingly, summary judgment on Plaintiff's Title VII claim for discriminatory failure to promote as well as on her § 1983 equal protection claim is warranted.

**E.  Failure To Promote In Retaliation for Bringing Claims Against DCF**

Plaintiff's claim that DCF retaliated against her for filing a Title VII action and EEOC charges is subject to the same three-part analysis under McDonnell Douglas.  In the first instance, Plaintiff must establish a prima facie claim of discriminatory retaliation.  To do so, she must adduce evidence that: "(1) she engaged in conduct protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386

(3d Cir. 1995)). Defendant argues that there is no evidence of a causal link between the Title VII action filed by Scrutchins in 2004 and her 2008 filing of an EEOC complaint and the adverse employment actions of which she complains in this case. They point out that while temporal proximity between events may create an inference of causation, there is a gap of three years between the conclusion of Plaintiff's prior Title VII suit against DCF, which settled in 2008, and the instances in which Plaintiff claims she was not promoted in retaliation for pursuing those claims.

In LeBoon v. Lancaster, the Third Circuit held, in the context of a Title VII relation that where the temporal proximity is "unduly suggestive" of retaliation, that is, when the protected activity and the adverse action occur very close in time to each other, the proximity alone may create an inference of causality. LeBoon v. Lancaster Jewish Community Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007). It expressly rejected the plaintiff's argument that three months was close enough in time to give rise to such an inference. Id. at 233 ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.") In the absence of temporal proximity which gives rise to an inference of a causal link, a plaintiff, the LeBoon court held, must offer some other evidence of causation to defeat a motion for summary judgment on a Title VII retaliation claim. Id. at 232-33. "Among the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." Id.

In this case, Scrutchins presents no evidence of a close temporal connection between the allegedly retaliatory non-promotions and her prior lawsuits and complaints. Nor does she present evidence of intervening antagonism, retaliatory animus or other circumstances which would allow a reasonable factfinder to conclude that Scrutchins has established a <u>prima facie</u> case of retaliation in violation of Title VII. Thus, summary judgment on the Title VII retaliation claim will also be granted.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that DCF has demonstrated that it is entitled to summary judgment on all claims in this action. Its motion will be granted in its entirety. An appropriate Order will be filed.

　　　　　　　　　　　　　　　　　　　　 s/ Stanley R. Chesler  
　　　　　　　　　　　　　　　　　　　　STANLEY R. CHESLER  
　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated: December 10, 2014